UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LOSANNA TRUXILLO | CIVIL ACTION |
| VERSUS | NO: 07-2883 |
| JOHNSON & JOHNSON, ET AL. | SECTION: "J" (3) |

**ORDER**

Before the Court is Defendant's Motion to Dismiss (Rec. Doc. 4). For the reasons explained below Defendant's Motion is **GRANTED**.

**BACKGROUND**

Losanna Truxillo was admitted to the Thibodeaux Regional Medical Center on September 7, 2001 for a total abdominal hysterectomy and a bilateral salpingo-oophorectomy.[1] A Dr. Bloss performed the surgery and after the surgery he performed a fascial closure on the Plaintiff using No. 1 Prolene sutures, which were made by Johnson & Johnson. After her surgery, Ms. Truxillo suffered abdominal bleeding and discomfort, which required two additional surgeries and three excisions of foreign

---

[1]A surgery to remove both ovaries and both fallopian tubes

bodies.

Plaintiff claim that during the period from 2000-2005, Johnson and Johnson knew that the sutures were defective and but did not warn surgeons of the risks involved in using them. Ms. Truxillo instituted this particular action to recover for her damages.[2]

## DISCUSSION

Count IV in the plaintiff's pleading is a claim that defendant Johnson & Johnson fraudulently concealed material information about the sutures, and committed fraud by keeping the sutures on the market after defendants knew that the sutures were dangerous. (Rec. Doc. 1).

Defendant cites numerous cases for the proposition that the Louisiana Products Liability Law does not allow a claimant to recover on the basis of fraud. *See e.g., Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1247, 1251 (5th Cir. 1997). Louisiana Products Liability Law provides only four theories of recovery against a manufacturer. A Plaintiff may recover only for a product that is: (1) unreasonably dangerous in design; (2) unreasonably dangerous in construction or composition; (3) unreasonably dangerous because of an inadequate warning; and (4)

---

[2]This case is styled as a class action suit. However, the Court will refer to the Plaintiff in the singular.

unreasonably dangerous because of a breach of express warranty. *See* LA. REV. STAT. §9:2800.54.  While this may not be the only theories available to the plaintiff, it seems clear from the jurisprudence that fraud is not available in a LPLA case.  *See Borskey v. Medtronics*, 1998 WL 122602, at *4 (E.D. La. Mar. 18, 1998)("The LPLA does not preclude recovery from a manufacturer for damages for economic loss due in a redhibition claim . . . however . . . fraud, fraudulent concealment, and deceptive advertising claims are really claims against the manufacturer for damage to plaintiffs caused by its product.  Thus the LPLA controls." (citing *Todd v. Brown & Williamson Tobacco Corp.*, 924 F. Supp. 59 (W.D. La. 1996); *Draten v. Winn Dixie of La., Inc.*, 652 So. 2d 675 (La. App. 1 Cir. 1995))).  All of these case point to the same conclusion: that a plaintiff cannot allege fraud as a part of a claim under the Louisiana Products Liability Law.

## POLICY ARGUMENTS

The Plaintiff does not dispute that fraud cannot be alleged under the LPLA.  However the plaintiff alleges that there is no rational policy advanced by such a conclusion.  Relying on an article by Professor Thomas Galligan in the *Louisiana Law Review*, the Plaintiff contends that the LPLA does not advance the policy

3

goals stated by the legislature.

The Louisiana Supreme Court has held that "Legislation is a solemn expression of legislative will; therefore, interpretation of a law is primarily the search for the Legislature's intent. The starting point for interpretation of any statute is the language of the statute itself.  When a law is clear and unambiguous and its application does not lead to absurd consequences, the law is applied as written, and no future interpretation may be made in search of legislative intent." *Fontenot v. Reddell Vidrine Water Dist.*, 836 So. 2d 14, 20 (La. 2003)(*citing* LA. CIV. CODE ANN. arts. 2, 9).  Here plaintiffs are inviting the court to consider the policy of the legislature in enacting the LPLA, and determine that the effects of the LPLA do not conform with the what the legislature was trying to accomplish.  Arguing that the elimination of negligence and fraud as available causes of action does not advance the policies intended by the legislature does not change the fact that the legislative intent of the statute was to remove fraud and negligence as available causes of action under the LPLA.  *See* Thomas C. Galligan, Jr., *The Louisiana Products Liability Act: Making Sense of It All,* 49 LA. L. REV. 629, 634-39 (1989)(recounting the legislative history of the act); *see also* David L. Browne, *When the Smoke Clears, Where Will Louisiana*

*Stand? An Analysis of Louisiana Products Liability Doctrine in Tobacco Litigation*, 65 Tul. L. Rev. 417, 418-22 (1990);  Mandy Foster, Stahl v. Novartis Pharmaceutical Corp.: *Inadequate Warnings and Inadequate Protection Under the Louisiana Products Liability Act*, 77 Tul. L. Rev. 803, 804-06 (2003).  Scholars and courts are in agreement that the legislative intent of the LPLA was to remove negligence and fraud as a cause of action under the LPLA, and this Court is not in a position to question that wisdom.  *See Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 483-84 (1992)("It is the duty of the courts to enforce the judgment of the Legislature, however much we might question its wisdom or fairness . . . . If the effects of the law are to be alleviated, that is within the province of the Legislature."); *Bd. of Comm'rs of Orleans Levee Dist. v. Dep't of Natural Res.*, 496 So. 2d 281, 298 n.5 (La. 1986)("Under the fundamental principles of separation of powers, this court's duty is to interpret and apply the constitution and the laws and not to question the wisdom of the statute . . . or to question the wisdom of the Legislature . . . in adopting [it].")  Therefore the plaintiff's contention that the LPLA does not serve the policy that the Legislature intended is of no moment in this Court.

5

**CHOICE OF LAW**

Plaintiff also contends that New Jersey's law should be applied to the case at bar.  New Jersey's Products Liability Act does not have the same exclusivity provision that the LPLA does.  *See Alloway v. Gen. Marine Indus., L.P.*, 695 A. 2d 264, 274 (N.J. 1997)("[T]he Legislature did not intend to codify in the Law all common-law remedies."(*citing  Senate Judiciary Committee Statement,* Senate, No. 2805, *L.* 1987, *c.* 197)).  Furthermore, New Jersey's Consumer Fraud Act does apply to manufacturers of medical devices as in this case.  *See Jones v. Spoletti,* 399 A.2d 1047, 1051 (N.J. Super. Law Div. 1979)(holding the Consumer Fraud Act applies to the manufacturer of an IUD device).  However, the Plaintiff does not adequately explain why New Jersey law should apply over Louisiana law.

This Court's jurisdiction over this matter is premised on the Court's diversity jurisdiction.  Therefore under the *Erie* doctrine, Louisiana law should be applied by this Court.  *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78-79 (1938).  Furthermore, when faced with a conflict of law issue, a federal court, sitting in diversity, is bound to apply the conflict of laws rules

prevailing in the state in which the federal court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Therefore this Court must look to Louisiana conflicts of law rules to determine whose law applies to this case.

Louisiana choice of law for delicts and quasi delicts are governed by LA. CIV. CODE ANN. arts. 3542-3548. Article 3542 is the general conflicts of law provision for delicts. The article provides in pertinent part: "Except as otherwise provided in this Title, an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue."

Article 3545 of the Civil Code provides more specifically: "Delictual and quasi-delictual liability for injury caused by a product, as well as damages, whether compensatory, special, or punitive, are governed by the law of this state: (1) when the injury was sustained in this state by a person domiciled or residing in this state; **or** (2) when the product was manufactured, produced, or acquired in this state and caused the injury either in this state or in another state to a person domiciled in this state."(emphasis added).

The comments to both Article 3542 and 3545 confirm that Article 3542 is the general provision and Article 3545 is the specific provision. Under civilian interpretation methodology,

7

the specific provision must trump the more general one.  *See* LA. CIV. CODE ANN. art. 3542 cmt. b ("The approach of this Article is further implemented by specific rules contained in Articles 3543-3546 . . . . Being more specific, these Articles should, when applicable, prevail over this Article [3542]."

Plaintiff admits that on its face, Article 3545 applies to the case at bar.  The injury occurred in Louisiana and the product was obtained in Louisiana.  Therefore the specific provisions of Article 3545 appear to be met.

Plaintiff contends however, that Article 3547 should apply in this case.  Article 3547 provides that "The law applicable under Articles 3543-3546 shall not apply if, from the totality of the circumstances of an exceptional case, it is clearly evident under the principles of Article 3542, that the policies of another state would be more seriously impaired if its law were not applied to the particular issue. In such event, the law of the other state shall apply."  The plaintiff submits that the law of New Jersey would be most seriously impaired if it were not applied.

Article 3547 requires that it must be clearly evident under article 3542 that the policies of another state would be impaired before outweighing the provision in article 3545.
Article 3542 provides that the state whose law would be most

8

impaired if its laws would not apply "is determined by evaluating the strength and pertinence of the relevant policies of the involved states in light of :(1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing consequences of injurious acts."

Article 3515 provides "That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state."

Applying these articles to the case at bar, it is far from clear that New Jersey law would be most impaired if its law were not applied.  Using the factors in Article 3542, the place of the conduct and injury complained of was Louisiana, and the domicile of the plaintiff is Louisiana.  The contacts and relationship

between the parties occurred in Louisiana as well. While plaintiff may be correct that any alleged fraud or misrepresentation occurred in New Jersey (the principal place of business for Johnson & Johnson), that fact alone does not outweigh Louisiana's interest in this litigation. *See Tolliver v. Naor*, 115 F. Supp. 2d 697, 701-02 (E.D. La. 2000).

Thus, despite Plaintiff's creative attempts to pigeon hole this action into New Jersey law, this case is clearly governed by Louisiana Law. Therefore defendant's motion to dismiss the fraud actions are with merit.

## PUNITIVE DAMAGES

Defendant also moves to dismiss the punitive damages prayed for by the plaintiff on the basis that such damages are not available to her under Louisiana law. Plaintiff does not specifically reply to the defendant's motion, but to the extent that she does with her arguments about the conflicts of law, those arguments do not apply to the punitive damages issue either.

In the absence of other meaningful argument, defendant's contention that punitive damages are not available in Louisiana unless authorized by statute is well-taken. *See Ross v. Conoco,*

*Inc.*, 828 So. 2d 546, 555 (La. 2002)("In Louisiana, there is a general public policy against punitive damages; thus, a fundamental tenet of our law is that punitive or other penalty damages are not allowable unless expressly authorized by statute"(*citing Ricard v. State*, 390 So. 2d 882 (La. 1980))). The LPLA does not provide for punitive damages. *Int'l Harvester Credit Corp. v. Seale*, 518 So. 2d 1039 (La. 1988); *see Cheeks v. Bayer Corp.*, 2003 WL 1748460 (E.D. La. Mar. 28, 2003).

**CONCLUSION**

Accordingly, the Defendant's Motion to Dismiss (Rec. Doc. 4) is **GRANTED**.

New Orleans, Louisiana this the 26th day of June, 2007.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE